# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

RICHARD LEE GRUBER,

    Petitioner,

vs.

JACK PALMER, et al.,

    Respondents.

Case No. 3:06-CV-00655-ECR-(RAM)

**ORDER**

    Before the Court are the First Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#30), Respondents' Answer (#49), and Petitioner's Reply (#56). The Court finds that Petitioner is not entitled to relief, and it denies the First Amended Petition (#30).

    Pursuant to a plea agreement, Petitioner was convicted in the Eighth Judicial District Court of the State of Nevada of Count I, sexual assault with a minor under the age of 16, Count II, lewdness with a child under the age of 14, and Count III, attempted sexual assault with a minor under the age of 16. Petitioner's Ex. 9 (#31-9). The victim in first two counts was Petitioner's younger step-daughter, and the victim in the third count was Petitioner's older step-daughter. Petitioner filed a notice of appeal pro se. Respondents' Ex. 8 (#16-3, p. 22).[1] The Nevada Supreme Court dismissed the appeal as untimely. Respondents' Ex. 9 (#16-3, p. 24). Petitioner then filed a post-conviction habeas corpus petition in the state district court. Petitioner's Ex. 12 (#31-12). The

---

[1] Page numbers in parentheses refer to the images of the documents in the Court's computer docket.

district court denied the petition. Petitioner's Ex. 16 (#31-16). Petitioner appealed, and the Nevada Supreme Court affirmed. Petitioner's Ex. 21 (#31-21). Petitioner then commenced this action.[2]

"A federal court may grant a state habeas petitioner relief for a claim that was adjudicated on the merits in state court only if that adjudication 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,'" Mitchell v. Esparza, 540 U.S. 12, 15 (2003) (quoting 28 U.S.C. § 2254(d)(1)), or if the state-court adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

> A state court's decision is "contrary to" our clearly established law if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court's decision is not "contrary to . . . clearly established Federal law" simply because the court did not cite our opinions. We have held that a state court need not even be aware of our precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them."

Id. at 15-16. "Under § 2254(d)(1)'s 'unreasonable application' clause . . . a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must be objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotations omitted).

> [T]he range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time. Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.

Yarborough v. Alvarado, 541 U.S. 652, 664 (2004).

---

[2] Petitioner has filed other post-conviction petitions and motions in state court after the conclusion of his first habeas corpus petition, but they do not affect the Court's analysis of the grounds that he presents in his First Amended Petition (#30).

The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004).

In Ground 1, Petitioner claims that his plea was not entered knowingly, intelligently, and voluntarily because he was taking psychiatric medication at the time of the plea. He further alleges that even though the court and his counsel knew of his mental illness, there was no hearing to determine his competence. Ground 1 contains two separate legal issues: Whether Petitioner was competent to stand trial, and whether Petitioner's waiver of his rights was knowing and voluntary. The test of competence is "whether a criminal defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding-and whether he has a rational as well as factual understanding of the proceedings against him.'" Drope v. Missouri, 420 U.S. 162, 172 (1975) (citing Dusky v. United States, 362 U.S. 402 (1960)). For a guilty plea to be knowing and voluntary, the defendant must be fully aware of the direct consequences of the plea. Brady v. United States, 397 U.S. 742, 755 (1970).

> A finding that a defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. . . . In this sense there is a "heightened" standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of competence.
>
> [Footnote 12:] The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings. . . .
>
> The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced.

Godinez v. Moran, 509 U.S. 389, 400-01 & n.12 (1993) (citations omitted). On the matter of competence, the Nevada Supreme Court stated the correct test: "[W]hether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and if he has a rational and factual understanding of the proceedings." Petitioner's Ex. 21, p. 3 (#31-22, p. 4). See Drope, 420 U.S. at 172. The Nevada Supreme Court then held:

> The district court conducted an extensive plea canvass, and appellant responded appropriately to all of the court's questions. Appellant stated at the canvass that he had received medicine every day for his psychological illness since being incarcerated. The plea agreement stated that appellant was not under the influence of any controlled substances or drugs which impaired his ability to comprehend or understand the plea agreement and proceedings surrounding his plea, and appellant stated during his canvass that he had read, understood, and signed the plea agreement. The record supports the district court's conclusion that appellant understood the proceedings and was able to consult with his counsel. Thus, the district court did not err in denying this claim.

Petitioner's Ex. 21, p. 3 (#31-21, p. 4). The question is not whether Petitioner had a mental illness—the evidence indicates that he has a paranoid personality disorder—but whether he met the Drope standard for competence. Everything in the transcripts indicates that he was on anti-psychotic medication at the time of the criminal court proceedings, that he was able to consult with his lawyer, and that he understood those proceedings. Nothing in the transcripts indicates that he was behaving or speaking bizarrely, such that reasonable counsel would ask for a hearing on his competence, or that the court would order on its own motion a hearing on his competence.[3] To that extent, the Nevada Supreme Court's decision was a reasonable application of Moran and Drope.

Furthermore, the record indicates that Petitioner's plea was knowing and voluntary. He understood that the judge was not bound by the negotiations on the sentence, that if the judge accepted the negotiations then he would serve the sentences for Counts I and II consecutively, with the parties free to argue whether the sentence for Count III would be consecutive to or concurrent with the sentences on Counts I and II, and that he would be subject to supervision and registration as a sex offender for the rest of his life. He understood the charges, he understood what rights he had and was waiving, and he admitted that the committed the crimes charged. Respondents' Ex. 6 (#16-3, p. 1). Petitioner's plea was knowing and voluntary.

Reasonable jurists might find the Court's conclusions to be debatable, and the Court grants a certificate of appealability on this ground.

---

[3]Petitioner notes that he reported hallucinations and hearing voices to jail medical personnel. First Amended Petition, p. 8 (#30). Those reports occurred a month after he pleaded guilty, and thus could not have informed the court or counsel at the plea hearing.

-4-

The Court dismissed Ground 2 as procedurally barred. Order (#48). The Court noted that the Nevada Supreme Court was clear when it dismissed, pursuant to Nev. Rev. Stat. § 34.810, all claims in the state habeas corpus petition that did not raise ineffective assistance of counsel. The Court also noted that the Court of Appeals for the Ninth Circuit has held that § 34.810 is an adequate and independent state-law reason for denying relief. Order, p. 3 (#48). Reasonable jurists would not disagree with these conclusions, and the Court will not grant a certificate of appealability on this ground.

Grounds 3 and 4 are claims of ineffective assistance of counsel. "[T]he right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 & n.14 (1970). A petitioner claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," id. at 694. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697.

Strickland expressly declines to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. 466 U.S. at 688. The Court avoided defining defense counsel's duties so exhaustively as to give rise to a "checklist for judicial evaluation of attorney performance. . . . Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Id. at 688-89.

Review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." Strickland, 466 U.S. at 689. A reviewing court must "indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. (citation omitted).

The Sixth Amendment does not guarantee effective counsel per se, but rather a fair proceeding with a reliable outcome. See Strickland, 466 U.S. at 691-92. See also Jennings v. Woodford, 290 F.3d 1006, 1012 (9th Cir. 2002). Consequently, a demonstration that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. The petitioner must also show that the attorney's sub-par performance prejudiced the defense. Strickland, 466 U.S. at 691-92. There must be a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

If a state court applies the principles of Strickland to a claim of ineffective assistance of counsel in a proceeding before that court, the petitioner must show that the state court applied Strickland in an objectively unreasonable manner to gain federal habeas corpus relief. Woodford v. Visciotti, 537 U.S. 19, 25 (2002) (per curiam).

Ground 3 contains three separate claims of ineffective assistance. In Ground 3(a), Petitioner alleges that counsel failed to investigate Petitioner's mental health history, to inform the Court that Petitioner was incompetent to enter a plea of guilty, and to request a competency hearing. Petitioner also alleges that counsel allowed Petitioner to enter a plea despite his inability to comprehend the proceedings. Ground 1 is the underlying claim regarding competence and the validity of the guilty plea, and the Court has already determined that Ground 1 is without merit. Consequently, Ground 3(a) is without merit.

As with Ground 1, reasonable jurists might debate the Court's conclusion, and the Court grants a certificate of appealability on this issue.

In Ground 3(b), Petitioner alleges that counsel failed to file a motion to suppress Petitioner's statement to police. He argues that he was not competent at the time of the statement, and thus the statement was not voluntary; if counsel had moved to suppress the statement instead of

advising Petitioner that it would be admitted against him, then Petitioner would not have pleaded guilty. On this issue, the Nevada Supreme Court held:

> Second, appellant claimed that counsel was ineffective for failing to move the court to suppress his statement to detectives because there was never a reading of his <u>Miranda</u> rights on the record and the detectives withheld medication from him. Appellant failed to demonstrate that counsel's performance was ineffective, or that, but for counsel's performance, appellant would have refused to plead guilty and would have proceeded to trial. Per appellant's arrest report, appellant was read his <u>Miranda</u> rights, stated that he understood them, and wished to talk to detectives about the alleged sexual abuse. There was no evidence on the record that appellant was deprived of medication during interrogation. <u>Furthermore, appellant had negotiated his plea bargain prior to waiving his preliminary hearing, so counsel did not have the opportunity to file a motion to suppress.</u> Appellant benefited [sic] from pleading guilty because he avoided additional charges and a potential greater maximum sentence. The first amended complaint listed eight counts of sexual assault of a minor under the age of sixteen, twelve counts of lewdness with a child under the age of fourteen, and four counts of open and gross lewdness. Thus, the district court did not err in denying this claim.

Petitioner's Ex. 21, pp. 3-4 (#31-21, pp. 4-5) (emphasis added) (citing <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966)). Petitioner no longer claims that the off-record <u>Miranda</u> warnings were invalid. The rest of the Nevada Supreme Court's holding shows a disagreement with Petitioner over cause and effect. Petitioner argues that if counsel had moved to suppress the statement to police, assuming that the motion would be successful, then he would not have pleaded guilty. The Nevada Supreme Court held that counsel could not have moved to suppress the statement to police because Petitioner decided to plead guilty before counsel had the opportunity to move to suppress the statement. <u>See</u> Petitioner's Ex. 4 (#31-4) (waiver of preliminary hearing due to plea agreement). Other evidence in the record shows the reasonableness of the Nevada Supreme Court's holding. Petitioner's statement to the police was not his only admission of the crime. In the declaration of arrest, Detective Chandler of the Las Vegas Metropolitan Police Department stated that he listened in to a telephone conversation between Petitioner and his older step-daughter; Petitioner admitted that he had committed the sexual acts upon both of his step-daughters. Respondents' Ex. 1 (#16-1, p. 1). That statement was admissible through the testimony of the detective, through the testimony of the step-daughter, or through any recording made of the conversation. <u>See</u> Nev. Rev. Stat. § 51.035(3)(a) (statement of party-opponent not hearsay). If counsel had succeeded in suppressing Petitioner's statement to police, then his statement in the phone conversation still would have been admitted.

Success in the motion to suppress would have had two possible outcomes. First, it could have been an empty victory. Petitioner might have realized that enough incriminating evidence still remained and accepted the plea bargain, if it was still offered. Second, it could have been a Pyrrhic victory. The prosecution might have offered a much less favorable plea bargain, or Petitioner might have gone to trial and, given his own admissions, have been convicted of far worse charges than those to which he has pleaded guilty. Petitioner suffered no prejudice from the lack of a motion to suppress his statement to police. Furthermore, given that counsel was aware of the declaration of arrest, her advice to plead guilty and not to pursue a motion to suppress was not deficient performance. The Nevada Supreme Court reasonably applied Strickland. 28 U.S.C. § 2254(d)(1).

Reasonable jurists might find this conclusion debatable, and the Court grants a certificate of appealability on this issue.

In Ground 3(c), Petitioner alleges that counsel had Petitioner plead guilty to a charge—attempted sexual assault upon his older step-daughter—that the plea agreement stated would not be pursued and which was time-barred. On this issue, the Nevada Supreme Court ruled:

> Last, appellant claimed that counsel was ineffective for failing to object to him pleading guilty to the attempted sexual assault, because the State had negotiated the plea agreement to only contain the sexual assault and the lewdness counts. This claim is not supported by the record. At the waiver of the preliminary hearing, the State read into the record the plea as negotiated, including a count of attempted sexual assault. The plea agreement specified what counts appellant was pleading guilty to, including a count of attempted sexual assault. At the plea canvass, appellant stated that he had read and understood the plea agreement, that he understood the charges against him, and that he was pleading voluntarily. Appellant specifically admitted during his plea canvass that he committed the attempted sexual assault. Appellant failed to demonstrate that counsel was ineffective. Thus, the district court did not err in denying this claim.

Petitioner's Ex. 21, pp. 4-5 (#31-21, pp. 5-6). Two paragraphs after noting that Petitioner would plead guilty in Count III to attempted sexual assault upon his older step-daughter, the agreement states that the prosecution would not pursue charges of sexual assault upon Petitioner's older step-daughter. Respondents' Ex. 5, pp. 1-2 (#16-2, pp. 6-7). At worst, this was clumsy drafting. As the Nevada Supreme Court noted, at the waiver of the preliminary hearing, the prosecution explained that Petitioner would plead guilty to one count regarding his older step-daughter in exchange for the prosecution not filing another case regarding her. Petitioner and his counsel agreed with that

explanation. Respondents' Ex. 3, pp. 3-4 (#16-1, pp. 14-15). At the plea hearing, the prosecution noted that Petitioner was waiving all defects in the timeliness of Count III in exchange for the prosecution not filing other charges regarding his older step-daughter. Respondents' Ex. 6, p. 6 (#16-3, p. 7). Finally, at sentencing Petitioner's counsel explained:

> Your Honor, perhaps I can explain what happened. Originally this was a case filed against one particular victim. There was another victim that something had happened to that was an older case. And basically the State, in investigating the case on Victim No. 1, said we're going to open a second case on Victim No. 2.
>
> This obviously became the point of negotiations and why we ultimately negotiated the case where Mr. Gruber is admitting to acts against both victims. But part of that would have involved this Second Criminal Complaint being filed. And in contemplation of that being filed we negotiated the case with the understanding that if he did not negotiate, the State was going to go ahead and file the Second Amended Criminal Complaint.
>
> And we know that they didn't actually intend to do so at that time, with the idea that if he backed out of his negotiation, then that Second Amended Criminal Complaint would then become the charges in the case. And that was the basis for his actually agreeing to plead to the count involving [his older step-daughter]. That wasn't part of the original charges.

Petitioner's Ex. 8, pp. 4-5 (#31-8, pp. 3-4). Petitioner's older step-daughter had reported Petitioner's sexual assaults upon her soon after they happened. The statute of limitation did not apply to those charges. Nev. Rev. Stat. § 171.083. For a charge of attempted sexual assault upon his older step-daughter, the period of limitation probably had run out. See Nev. Rev. Stat. § 171.085. In exchange for agreeing to plead guilty to an otherwise untimely count of attempted sexual assault, Petitioner was not charged with counts of sexual assault upon his older step-daughter. The written plea agreement did not convey that bargain well, but comments by the attorneys explained what was really happening. Furthermore, counsel did have a good reason for not objecting to the otherwise untimely count. If counsel did object, then the result would not have been an agreement to plead guilty to the remaining Counts I and II. Instead, the result would have been the collapse of plea negotiations. The second amended criminal complaint shows that Petitioner then would have faced 8 counts of sexual assault upon a minor under 16 years of age, 12 counts of lewdness with a child under the age of 14, and 4 counts of open or gross lewdness, all involving Petitioner's younger step-daughter. Petitioner's Ex. 3 (#31-3). Because the prosecution did not file another case against Petitioner, involving his older step-daughter, the Court does not

know how many additional counts of sexual assault he faced, but it was at least one count. Petitioner never faced those charges because he agreed to plead guilty. Under those circumstances, the Nevada Supreme Court reasonably applied Strickland. 28 U.S.C. § 2254(d)(1).

Reasonable jurists might find this conclusion to be debatable, and the Court grants a certificate of appealability on this issue.

In Ground 4, Petitioner argues that counsel should have obtained Petitioner's mental health records to try to mitigate his sentence. As noted above, the parties negotiated the sentences; the sentences for Counts I and II were to be served consecutively, and the parties retained the right to argue whether the sentence for Count III was to be served consecutively or concurrently. Petitioner notes that at sentencing counsel's primary argument was that Petitioner's mental illness should mitigate the sentence, but that counsel did not obtain the records that could show his lengthy history of mental illness. At sentencing, counsel repeatedly noted that Petitioner has suffered from schizophrenia, a severe mental illness, since at least the age of 23, and Petitioner was 39 at the time of sentencing. Petitioner's Ex. 8, pp. 17-20, 23-24 (#31-8, pp. 7, 8). The Court has reviewed the sealed mental health records. They reinforce what counsel argued at sentencing, but they add nothing new. Furthermore, there is no sign that the sentencing court did not believe counsel; to the contrary, that court knew from early in the proceedings that Petitioner was on psychiatric medications for his schizophrenia. Petitioner has not shown how placing the mental health records into evidence could have resulted in the judge directing that Count III run concurrently.

Reasonable jurists might debate this conclusion, and the Court grants a certificate of appealability on this issue.

IT IS THEREFORE ORDERED that the First Amended Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (#30) is **DENIED**. The Clerk of the Court shall enter judgment accordingly.

IT IS FURTHER ORDERED that a certificate of appealability is **GRANTED** on the following issues:

    1.    Whether the Court was correct in ruling that the Nevada Supreme Court reasonably applied clearly established federal law in its holding that Petitioner was competent to enter his plea, and that his plea was knowing and voluntary;

2. Whether the Court was correct in ruling that counsel was not ineffective regarding the investigation of Petitioner's mental health history, and for not requesting the trial court to hold a competency hearing;

3. Whether the Court was correct in ruling that the Nevada Supreme Court reasonably applied clearly established federal law in its holding that the lack of a motion to suppress Petitioner's statement to police was not ineffective assistance of counsel;

4. Whether the Court was correct in ruling that the Nevada Supreme Court reasonably applied clearly established federal law in its holding that the lack of objection to the attempted sexual assault charge in Count III was not ineffective assistance of counsel; and

5. Whether the Court was correct in ruling that counsel was not ineffective regarding counsel's investigation of Petitioner's mental health history and presentation of that history as evidence to mitigate his sentence.

DATED: March 5, 2010

_____
EDWARD C. REED
United States District Judge